Curia, per

Withers, J.
The qualification of the expolded doctrine (that no one shall be allowed to stultify himself, by plea or evidence) has itself disappeared; that is to say, a defendant is not now bound, in equity or at law, to lay the basis of such defence as he may find in the fact of drunkenness, by proving that the incapacity arising therefrom has been procured or produced by the agency of the party who sues him.
It will be observed, that the contract imputed to the defendant, Cannon, in the form of a note under seal, is the cause of action in the case before us. It was holden on the circuit that if the party defendant was as drunk as he insisted by his testimony he was, when he formally executed the note, it was a void contract ; yet the plaintiff had the benefit of the further instruction (to which it will be shewn in the sequel he was not entitled) *139 that the defendant could, by his subsequent conduct, when sober, affirm the contract, and so make himself liable upon it, as the specific cause of action.
The verdict of the jury having been rendered for the defen-ant, they must have resolved that he was too drunk to contract when he signed his name to the note; which, being therefore void, no inference of ratification could be drawn from the defendant’s subsequent conduct.
This result is impeached here, upon the grounds : 1st, That the Circuit Judge should have instructed the jury, that the contract was ratified by Cannon when sober, by appropriating the horse he got from Berkley to his own benefit; 2d, That he had estopped his defence founded on his own incapacity to contract, and the fraud and deceit imputed to Berkley, by failing to tender the horse back; and 3d, That the plaintiff was entitled to have recovered at least as for goods sold and delivered, and as much as he had been offered by another.
The point embraced in the first ground was submitted to the jury, as appears from the report, and from what has already been said; and their finding has been adverse to the plaintiff upon that question.
The second ground presents a point not free from difficulty, when not carefully considered; and upon which we were, at first, in danger of being led into error.
In considering this question we should be misled by assuming that our doctrine, touching a rescisión of a contract, applied to the present case. Where the benefit of that doctrine is claimed, it is accompanied by the obligation, on the part of him who claims it, to place the adverse party in statu quo ; and no disability so to do, arising from his own voluntary act, will work a dispensation from that duty; though impossibilities, as the death of a negro, or a horse, or other unavoidable destruction of property, should be enough to excuse from the performance of the condition. The defendant, however, is not properly driven to the position of one who seeks to rescind a contract in toto. The defendant says there never was a contract, such as that sued on, *140 in existence; that though a promise in form made by him is produced, yet that he executed it mechanically only; and that, by reason of gross intoxication, he was incapable of that assent of mind which is of the essence of a valid agreement. In short, he affirms that the note sued upon was wholly void, and not merely voidable. If that be true, (and be it remembered, the jury have found the incapacity of intellect alleged.) it is but a step of plain reasoning, fortified by common sense, to the conclusion that such a note was not capable of ratification.
Was the note void ? a note signed by one who was too drunk to know what he was doing Í
Now a note, even under seal, falls as readily before the force of such ascertained fact, as any other form of contract that could be alleged. But by assuming other forms of contract to have been the foundation of this action, we shall see more distinctly the principle which must determine our judgment. Suppose, then, by parol, (meaning verbally,) Berkley and Cannon had concluded to exchange horses, and Cannon had received Berkley’s horse, promising specifically to deliver to him another, worth $375; could Berkley have enforced this specific stipulation as a contract'? Manifestly not, for it would be the promise of one non compos. Suppose Berkly had bought Cannon’s horse, to be delivered, and had paid him the money, or he had received it mechanically, though too drunk to comprehend the transaction; such a specific promise to deliver could not be enforced, for the same reason. An action for goods bargained and sold to Cannon, could not be enforced, for that implies the assent of intelligence, which Cannon was unable to give. Nor would it make any difference if the goods had been delivered and retained ; a stipulated price having been, fixed, the action for the stipulated price must fail. In all these cases, however, if Cannon retained the property of Berkley, the latter would not be without redress ; for he could bring an action for that cause implied by law, that is to say, a ground of action springing out of the conduct of Cannon when competent to act, irom which act the law would imply an assumpsit. The action in the present case, however, is founded upon the specific *141 terms of an apparent contract; those terms are stipulated by one incompetent to contract; the evidence of those stipulations is a written instrument, as invalid as a contract, alleged to have assumed any other form, express or implied, touching the same subject matter.
The confusion upon this subject has arisen from considering such a contract as Cannon’s voidable only, and, therefore, of course, capable of confirmation by implication; by considering subsequent conduct as confirming a previous contract, invalid without it; instead of regarding that subsequent conduct as evidence merely upon the question, whether the contract in dispute ever was invalid or void. It is quite inaccurate to speak of ratifying that which never had an existence ; the note in this case never had an existence as a contract, and whatever Cannon afterwards did, however he might become liable upon what he may have done as a distinct, independent cause of action, it cannot breathe life, into that which was no more than a caput mortuum. When this subsequent conduct of Cannon failed to establish the validity of the sealed instrument upon which he was sued, as the jury have found, of course it failed to support this action founded upon that instrument. Such subsequent conduct, if ascertained to amount to a retention and appropriation of Berkley’s property, might itself give rise to a cause of action founded on an implication of law; but assuredly that could not be an action of debt on a sealed note.
Twice Lord Ellenborough held (though at nisi prius, to be sure,) that the alleged contract of one drunk to the degree of mental incapacity, was void : (vide 3 Camp. 33, Pitt vs. Smith ; and 1 Starkie R. 126, Fenton vs. Holloway.) Mr. Chitty conceives this doctrine, to be settled in the English Courts (vide Chitty on Con. 140, 141.)
In the case of Gore vs. Gibson (13 M. & W. 623,) the Court of Exchequer had occasion to consider the point, and that Court decided it according to the view hereinbefore advanced. The case was an action by indorsee against indorser: The plea alleged that the defendant was so drunken, intoxicated and under *142 the influence of liquor as to be unable to comprehend the object, nature or effect of the indorsement, or to contract or promise thereby; and that the plaintiff had full knowledge and notice of the premises. Demurrer and joinder. The demurrer was overruled by the Court, unanimously. Ch. Baron Pollock took a distinction between contracts express and implied, and observed: “Where the right of action is grounded upon a specific, distinct contract, requiring the assent of both parties, and one of them is incapable of assenting, in such a case there can be no binding contract; but in many cases the law does not require an actual agreement between the parties, but implies a contract, from the circumstances ; in fact, the law itself makes the contract for the parties. Thus in actions for money had and received to the plaintiff’s use, or money paid by him to the defendant’s use, the action may lie against the defendant, even though he may have protested against the contract. So a tradesman who supplies a drunken man with necessaries may recover the price of them if the party keeps them when he becomes sober, although a count for goods bargained and sold would fail. In this case, the defendant is still liable for the consideration of his indorsement, although the indorsement itself can give the plaintiff no title.” Parke, B. held that a contract,.attempted to be made under the circumstances stated in the plea, “is void altogether,” and that a person taking “an obligation under such circumstances, is guilty of actual fraud.” Alderson, B. held that a party, even in a state of complete drunkenness, might be liable where the contract was necessary for his preservation, as in the case of a supply of actual necessaries; “ so also, where he keeps the goods when he is sober. The ground of his liability there is, that an implied contract to pay for the goods arises from his conduct when he is sober; although I doubt much whether, if he repudiated the contract when sober, any action could be maintained upon it. Here (says he,) the action is necessarily brought upon the contract itself; and when it is shewn that the contract by indorsement was made when the defendant was in such a state of drunkenness that he did not know what he was doing, and especially when it appears *143 that the plaintiff knew it, I cannot doubt that the contract is void altogether. It is just the same as if the defendant had written his namp upon the bill when in his sleep, in a state of somnambulism.” The plaintiff had leave to amend, it is presumed, for the purpose of adding a count in general, indebitatus assumpsit.
The mind of Judge Cheves took the same direction as the above case indicates, when, in Wade & Massey, assignees of Tutt, vs. Colvert, (2 Mill, 27,) he observed: “but where drunkenness is such as not to leave men the power of distinctly perceiving and assenting, they cannot be bound, because the very essence of a contract is the assent of the contractor to what he may be presumed to understand. Tutt, in this case, from the testimony of the subscribing witness, appeared to be in a state which left him incapable of knowing what he did, and scarcely in a state of consciousness. No man can, under such circumstances, bind himself; he cannot assent. This bill of sale, if these facts are to be believed, never had existence; it was, ipso facto, void.”
In the case of Hall vs. Moorman, (3 McC. 477; S. C. 4 McC. 283,) Judge Nott said, what we endorse, to wit, that a very ready ear would not be given to the defence of drunkenness. It has been very properly said, by various judges, that courts will endeavor to prevent such a defence from becoming the cover of fraud. But it was said, in the case just cited, arguendo, “if people will voluntarily incapacitate themselves for doing then-ordinary business, they must take the consequences of their imprudence” — and have no right to call upon the Court to protect them “from all the consequences of intemperance and folly.”
This language could scarcely have been intended to mean that no degree of drunkenness could invalidate a contract, provided the debauchery were voluntary; for that would not at all comport with the doctrine of Wade & Massey, assignees of Tutt, vs. Colvert; nor with Cook vs. Clayworth, (decided in 1811, vide 18 Ves. 15,) where it is manifest that, assuming the voluntary drunkenness of Cook, the only question, on an application to rescind a contract, was as to the degree of intoxication. If such as to deprive one of his reason, Lord Eldon held that it would *144 invalidate a deed, even at law. The doctrine that one party-must be drawn into drink by the other was repudiated in the case of King’s Exr’s. vs. Bryant’s Exr’s., (2 Haywood, 394.)
There is no doubt (as stated in the outset in this opinion,) that the law of contracts, as to the defence arising from drunkenness, has undergone some change in respect to the particular now under consideration. This is well set forth and illustrated by a very acute writer, (Smith, in his Lectures upon the law of contracts, author of “Leading Cases” and “a Treatise on mercantile law,”) as may be seen in the 46th vol. Law Lib. 3d series, marginal page, 232. That writer considers it now a recognized principle, in our later jurisprudence, that it is not material to shew that a party has been drawn into drink. To the same effect is the opinion of Mr. Greenleaf (sec. 374, vol. 2, Evid.) and Story on Contracts, sec. 27.
In our case of Williams vs. Inabnet, (1 Bail. 343,) the question was of fact, whether the defendant was so drunk that he could not contract. All the witnesses except one thought not. The leading inquiry certainly was, whether defendant’s subsequent conduct, when cool and deliberate, retaining the major part of the consideration, while a portion had been rendered up, was consistent with his allegation that he was, in fact, too drunk to give binding assent. This is attested by the prudent remark of Colcock, J., that too ready an ear should not be given to such a defence; and that in all cases where the subsequent conduct of a party may appear to confirm a contract, the defence of incapacity should not be allowed. The jury were fully instructed to that effect in the case we are now deciding. Notwithstanding we find in Williams vs. Inabnet the remark, “for even if a man be so much intoxicated as not to know what he is doing, yet he may aftewards confirm the contract by his acts,” it is apparent, nevertheless, the point ruled was, that the defendant’s acts of confirmation, joined to the evidence in the case, left the jury without warrant in saying that he was too drunk to bind himself by the original transaction. Whether, if the reverse had been true, and assumed as fact, (to wit, that the contract was *145 originally void, from excessive intoxication,) that contract could be rendered valid and become a cause of action by the mere force of presumed ratification from acts in a sober moment, was not the point raised in that particular case, for it had to go back on the question of fact as to the degree of drunkenness; and the Court was the better satisfied with that result by the view they had of the other question. It is presumed that the new trial would have been granted in that case, even though the Court had taken the rule of law to be, that a contract, void for drunkenness, could not be afterwards confirmed, inferentially, by acts of ratification.
Beside all that has been said, there was a question of fraudulent representation before the jury, and it is not at all beyond their province to have found enough of that element, in so much of the contract as was embraced by the note, to have rebutted any liability to pay the sum specified in it.
A practical difficulty may be conceived in the way of a plaintiff sueing on a quantum valebant, (founded upon a legal implication from the deliberate retention or use of the goods,) while he holds a sealed note. Whether, if the same be produced and offered to be cancelled or delivered, he might proceed in the general indebitatus assumpsit; whether a party would ever be likely to set up such a defence, where he was interested to affirm that it was void, for any cause, and when it was tendered to him for cancellation; or whether a plaintiff must first press his higher security until it be ascertained, judicially, to be no security at all — are questions which we are under no obligation now to decide. It is not our duty to smooth the road of one who takes a security void for drunkenness or for fraud: we must decide such a case as he presents from time to time, and not weaken or withdraw the barrier which the law may afford to a defendant in the particular instance, by reason of any embarrassment or delay in attaining ultimate justice, if any be owing, by a party plaintiff who has knowingly fixed the circumstances of his own condition.
*146 The judgment of a majority of this Court is, that the motion be dismissed.
O’Neall, EvaNS, Wardlaw and Frost, JJ., concurred.

Motion i" éd.